## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| | ) | |
| **JIHAAD R. LASSITER** | ) | |
| | ) | **CIVIL ACTION** |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **No. 2:22-cv-05224** |
| | ) | |
| **AMERICAN POSTAL WORKERS** | ) | |
| **HOUSE,et. Al.,** | ) | |
| | ) | |
| *Defendants.* | ) | |

_____)

### CIVIL ACTION -
### AMENDED COMPLAINT

COMES NOW, Plaintiff JIHAAD R. LASSITER, by and through undersigned counsel, with this Complaint against the Defendants named above, in this civil action to demand monetary relief, award of economic and non-economic damages, punitive damages, injunctive or equitable relief, or any other form of relief deemed just and proper by this Honorable Court, and does hereby submit the following pleadings of fact and law:

### JURISDICTIONAL STATEMENT

1. This Honorable Court has jurisdiction over this civil matter by virtue of a federal question, 28 U.S.C. § 1331 and supplemental jurisdiction over state-based claims in tort under laws of the Commonwealth of Pennsylvania, per 28 U.S.C. § 1332.

2. Venue is proper within this District pursuant to 28 U.S.C. § 1391(b), where all facts pleaded occurred within this district as they pertain to the actions and or omissions, including

management or supervision of federally subsidized residential property and apartment complex located at 801 Locust St., Philadelphia, PA, Philadelphia County.

3. Venue is proper within this District where all rights, claims, causes of action, privileges and immunities, damages caused, and injuries suffered by Plaintiff, being pertinent to this cause of action and claimed herein, arose under federal and state law within the venue of Philadelphia County.

## PRELIMINARY STATEMENT

4. This civil action is brought by Plaintiff against all Defendants for violations of federal law under the Fair Housing Act (FHA), 42 U.S.C. §§ 3602, 3604, and 3601-3619, Title III of the Americans with Disability Act (ADA), 42 U.S.C. §§ 12181-12182 for discrimination in housing as to disability, and violations of all federal nondiscrimination statutes, Section 504 of the Rehabilitation Act of 1973, "Section 504", which applies to programs or activities primarily engaged in federally funded activities, here being providing housing to low income, elderly, and special needs persons with disabilities, through federal financial assistance and federally funded activities and programs regulated by HUD.

5. This civil action is brought by Plaintiff for related state-based claims in tort under Pennsylvania law for negligence, negligence *per se*, gross negligence, intentional and gross infliction of emotional distress, and defamation due to harm to Plaintiff's reputation and HUD case file and disability benefits eligibility with HUD and other agencies.

6. Defendants BERGER ASSOCIATES LLP, AMERICAN POSTAL WORKERS HOUSE ASSOCIATES LP, PHILADELPHIA POSTAL UNION HOUSING CORPORATION, 801 RESIDENCE LP, COMMUNITY REALTY MANAGEMENT INC, and HUDSON VALLEY PROPERTY GROUP and their managers, employees, and agents named herein,

acted with intent to coerce, intimidate, and threaten Plaintiff, and did conspire to act in direct retaliation for Plaintiff's availing himself of his rights under the FHA as defined in 42 U.S.C. § 3617[1], ADA, and Section 504.  <u>Revock v. Cowpet Bay W. Condo. Ass'n</u>, 853 F.3d 96 (3rd Cir. 2017)

7. Plaintiff's current Landlords, hereinafter referred to as "CRM Defendants", are owners, operators, and/or management of 801 Locust St. Philadelphia, PA, being named as Defendants 801 RESIDENCE LP, COMMUNITY REALTY MANAGEMENT INC, and HUDSON VALLEY PROPERTY GROUP, acting as such from January 1, 2022 to the present.

8. Plaintiff's current Landlord, CRM Defendants, are liable vicariously to Plaintiff under *respondeat superior,* because through the actions of their property managers, employees and agents, named herein as Defendants Nakeisha SIMMONS and Erica JOHNSON, were at all times acting under their direction, supervision, management and control, within the scope of employment, and did cause harm to Plaintiff.

9. Plaintiff's former Landlords, herein referred to as "Beger Defendants", are owners, operators, and/or management of 801 Locust St. Philadelphia, PA, being Defendants BERGER ASSOCIATES LLP, AMERICAN POSTAL WORKERS HOUSE ASSOCIATES LP, PHILADELPHIA POSTAL UNION HOUSING CORPORATION, and 801 RESIDENCE LP, from on or around January 1, 2021 to December 31, 2021.

10. Plaintiff's former Landlords, Berger Defendants, are liable vicariously to Plaintiff under *respondeat superior,* because through the actions of the property managers, employees and

---

[1]Pursuant to 42 U.S.C. § 3617, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

agents, named herein as Defendants Robert BERGER and Joseph BERGER, and Nakeisha

SIMMONS, and who were at all times acting under their direction, supervision, management

and control, within the scope of employment, and did cause harm to Plaintiff.

## THE PARTIES

### *Plaintiff is a disabled resident of a federally funded housing program*

11. Plaintiff is a resident of Philadelphia County.

12. Plaintiff is a tenant of the federally subsidized, residential and rental apartment complex

    located at 801 Locust St., Apt. 214 Philadelphia, PA 19107.

### *Plaintiff is disabled under definitions of federal law*

13. Plaintiff is a disabled person, paralyzed from the chest down to his lower-body and limbs.

14. Plaintiff's disability is plainly visible, depriving him of one or more major life functions.

15. Plaintiff's disability requires him 24/7 use of a motorized or manual wheelchair, both inside

    and outside his residential unit, at all times on and off the premises.

16. Plaintiff requires a motorized wheelchair being needed for all movement inside his

    residential unit, as well as for ingress and egress on and off the premises of 801 Locust

    Street, Philadelphia, PA.

### *Defendant business entities*

17. Berger Defendants and CRM Defendants operate as multiple corporate legal entities and

    individuals, who acted as Plaintiff's former and current Landlords, which includes

    management, operators, and/or owners of 801 Locust Street, Philadelphia, PA.

### *Federally Subsidized Housing*

18. The apartment complex at 801 Locust Street, Philadelphia, PA is a federally subsidized rental

    property, who advertise themselves to the public through www.hud.org as fit for persons who

are low income, elderly, special needs, and disabled, and otherwise in compliance with HUD

regulations and federal and state law.

19. Berger Defendants and CRM Defendants, are Plaintiff's former and current Landlords who

managed, operated, and/or owned 801 Locust St. Philadelphia, PA as a residential premises

and place of public accommodation.

20. Berger Defendants and CRM Defendants managed, operated, and/or owned 801 Locust

Street, Philadelphia, PA  as a federally funded activity or program and recipient of federal

assistance under Section 504.

## STATEMENT OF FACTS

### *Adequate Notice of disability*

21. Plaintiff began living as a tenant at 801 Locust St. on or around January 2014.

22. Plaintiff made verbal and written reasonable accommodation requests for his disability, on a

continuous and ongoing basis, with his current and former Landlords, since the inception of

his tenancy at 801 Locust Street, Philadelphia, PA.

23. Plaintiff's disability is plainly visible and renders him paralyzed from the mid-chest down to

his lower-body, impairing one or more major life functions.

24. Berger Defendants and CRM Defendants were aware and on notice of Plaintiff's disability

and paralyzed medical condition.

25. Plaintiff's reasonable accommodation requests varied from obtaining a first and second

emotional support animal, complaints about injuries he suffered in his bathroom due to

inadequate bathtub modifications, lack of access to his kitchen facilities due to inadequate

modifications to cabinetry and utilities, inadequate security measures causing problems and

delays with access to home health aides, and disputes over his access to a handicapped parking spot.

26. Plaintiff's requests were made directly with agents and employees of his current and former Landlords, Berger Defendants and CRM Defendants, on an ongoing basis, approximately every other week, from January 1, 2021 to December, 2022, and then through various email communications to the present.

### *Denied Requests for Reasonable Accommodations*

#### I.    *Verbal Requests made with Former Landlord (Berger Defendants)*

27. Plaintiff made verbal requests for his reasonable accommodations and modifications with Berger Defendants.

28. Each of Plaintiff's verbal requests and demands made on the dates indicated at Paragraphs 30. below pertained to issues, ranging from to his access to kitchen facilities and utilities, bathroom facilities and bathtub suited for his disability, access to bedroom storage closets, access to a handicapped parking spot, better access to his mailbox, extermination services, functional heating and cooling units, proper security technology to allow access to guests and medical professionals, better access to common areas, all which have been substantially impaired and obstructed to Plaintiff due to his disability and due to acts or omissions of his former Landlords, Berger Defendants.

29. Plaintiff made these complaints and requests verbally and directly to Defendant Robert BERGER, Defendant Joseph BERGER and Defendant Nakeisha SIMMONS.

30. On or around the following dates in 2021, Plaintiff made his verbal complaints and requests, directly to Defendants Joseph BERGER and Defendant SIMMONS, on or around the following dates:

    a.  On or around January 1 and January 15, 2021;

    b.  On or around February 1 and on February 15, 2021;

    c.  On or around March 1 and March 15, 2021;

    d.  On or around April 1 and April 15, 2021;

    e.  On or around May 1 and May 15, 2021;

    f.  On or around June 1 and June 15, 2021;

    g.  On or around July 1 and July 15, 2021;

    h.  On or around August 1 and August 15, 2021;

    i.  On or around September 1 and September 15, 2021;

    j.  On or around October 1 and October 15, 2021;

    k.  On or around November 1 and November  15, 2021;

    l.  On or around December 1 and December 15, 2021;

31. Plaintiff made regular and routine verbal complaints regarding his requests for better access to his bathroom and kitchen facility directly to Defendants Joseph BERGER and  SIMMONS from January 1, 2021 until December 31, 2021, on a bi-monthly basis.

32. Defendants Joseph BERGER and Defendant SIMMONS acted as agents and employees of Berger Defendants from January 1, 2021 until December 31, 2021.

    II.   *Verbal Requests made with Current Landlord (CRM Defendants)*

33. Plaintiff made verbal requests for his reasonable accommodations and modifications with CRM Defendants, made specifically and directly to Defendants SIMMONS and Erica JOHNSON.

34. Plaintiff's verbal requests in 2022 on dates indicated at Paragraphs 36. below pertained to access to kitchen facilities and utilities, bathroom facilities and bathtub suited for his

disability, access to bedroom storage closets, access to a handicapped parking spot, better access to his mailbox, extermination services, functional heating and cooling units, proper security technology to allow access to guests and medical professionals, better access to common areas, all which have been substantially impaired and obstructed to Plaintiff due to his disability and due to acts or omissions of his current Landlord, CRM Defendants.

35. Plaintiff made these complaints and requests verbally and directly to Defendants Erica JOHNSON and Defendant Nakeisha SIMMONS.

36. On or around the following dates in 2022, Plaintiff made his verbal complaints and requests directly to Defendant SIMMONS and Defendant Erica JOHNSON, on or around the following dates:

    a. On or around January 1 and January 15, 2022;

    b. On or around February 1 and February 15, 2022;

    c. On or around March 1 and March 15, 2022;

    d. On or around April 1 and April 15, 2022;

    e. On or around May 1 and May 15, 2022;

    f. On or around June 1 and June 15, 2022;

    g. On or around July 1 and July 15, 2022;

    h. On or around August 1 and August 15, 2022;

    i. On or around September 1 and September 15, 2022;

    j. On or around October 1 and October 15, 2022;

    k. On or around November 1 and November  15, 2022;

    l. On or around December 1 and December 15, 2022;

37. Plaintiff made regular verbal complaints regarding his requests for better access to his bathroom, bathtub, and kitchen directly to Defendants Nakeisha SIMMONS and Defendant Erica JOHNSON from January 1, 2022 until December 31, 2022, on a bi-monthly basis.

38. Defendants Erica JOHNSON and Defendant SIMMONS acted as agents and employees of CRM Defendants, from January 1, 2022 to the present.

III. *Email'd written Requests made with Current Landlord (CRM Defendants)*

39. Plaintiff proceeded to place his complaints in writing via email in November, 2022, prior to filing this lawsuit on December 29, 2022.

40. Plaintiff made a written request for reasonable accommodations and modifications, with his current Landlord, CRM Defendants.

**Exhibit A**, Email to CRM Defendants, *dated 11/17/2022 & 11/23/2022*

41. On November 17, 2022, Plaintiff sent an email to Defendant Erica JOHNSON, ejohnson@crmresidential.com making various written requests for accommodations and modifications related to his disability. **Exhibit A**

42. Plaintiff's written requests to his current Landlord, CRM Defendants, specifically included the following language:

    a. "1. Bathtub/Bathroom (I been ask about it becoming a walk-in or lets talk about making it a little more equip for me to use.)"

    b. "3. Cabinets (needs to be lower so I can get access to my items.)"

    c. "4. Balcony Door (needs a push button to open and close the door that door is pretty heavy to manage.)"

    d. "5. ...I got everybody bugs and mice somethings I never had…"

    e. "6. This carpet had leak after leak…"

    f.  "9. I gave you a copy of my medical record I don't know if you took the time out and to over it but I'm going through a lot dealing with a t2 to t4 spinal cord injury not to mention RCVS that just happen, and I have another surgery on the 18th which should help solve some issue."

    g.  "10. I don't want no sympathy from anybody just want empathy know what I am going through I never had any issues I always pay my rent I'm always respectful. There no communication between us am always reaching out but I don't get no response or it just get ignored but its my health we are tlaking about so this is why I am doing this…"

**Exhibit A**

43. On November 23, 2022, Plaintiff sent an email to Defendant Erica JOHNSON, ejohnson@crmresidential.com making various written requests for accommodations and modifications related to his disability, which included the following language:

    a.  "NEED SOME EMPATHY"

    b.  "I wanted to add the parking space is not wheelchair accessible the yellow pillar are in my way.my old parking spot was just right for me bcuz of the open space the way ethos bullie me for my spot all bcuz they wanted it was not cool bcuz its hard for me to get my wheelchair in and out of my car i have to get closer to the other car just to use the spots that's ridiculous."

    c.  "I ask can you let my aide dial 311 b4 they get to my Apartment so can at less get ready to get up and get the door bcuz it take me some time to get outta bed and i need to know when someone comes in for me. If you ask around they would tell you the guard let anybody in so leaving my door unlock is dangerous bcuz it

10

people going around checking doors. like to be honest my safety here isn't the same when kenny and the gang left. Please ask the guard to do a better job doing there job bcuz it's a senior citizen and disable people only live here need to feel safe here like it use to be."

d. "The back door to get in and out to the parking lot can you put a push button on it. so i can use it bcuz it's impossible to use without it please and thank you."

e. "I'm sorry that i have to write to you but I been calling I been trying to communicate with every managers from Joe to Shawn and now you it has been years that i been asking for these things and asking for help but i get the same answer every time and that was nothing just know i have a high level of injury and it's really hard living this life."

f. "I didn't have to keep asking or written consistently about something i need to accommodate my needs to be able to live life which is crazy."

g. "(I JUST WANT EMPATHY)"

**Exhibit A**

44. On January 25, 2023, Plaintiff sent an email to Defendant Erica JOHNSON, ejohnson@crmresidential.com discussing needed changes to Plaintiff's bathtub to accommodate his disability and to avoid unnecessary injuries, e.g. slip-and-fall.

**Exhibit B**, Email to CRM Defendants, *dated 01/25/2023*

45. Plaintiff requires a bathtub that accommodates his disability.

46. On June 12, 2023, Plaintiff sent an email to Defendant Erica JOHNSON, ejohnson@crmresidential.com discussing various maintenance requests related to his disability and quiet use and enjoyment of his premises.

**Exhibit C**, <u>Email to CRM Defendants</u>, *dated 06/12/2023*

47. Plaintiff's written requests and complaints contained such express language as,

      a.  "One my kitchen stove needs repair…"

      b.  "My refrigerator needs repair… Also the door of the refrigerator is falling apart."

      c.  "My handle on my closet door in my kitchen needs and nail and tighten up."

      d.  "I also have these stain on my carpet that needs to be look at…"

      e.  "My bathroom sink links when i use it and my sink drain slow at time i use plunger over the weekend."

      f.  "Also my air conditioners don't work well i know it cut on and off but it don't blow cold air out all the time and it blow hot air as well."

      g.  "I know we had an inspection but did you notice the dent and cracks I have in my walls from my power wheelchair you know it kind of hard to move around in this tight space using a power wheelchair."

      h.  "My walls needs paint it starting to look gray and it has marks all over them as well…"

      i.  "Also it states that this building do have a 2 bedroom apartment but when I ask for that 2 bedroom for more space bcuz of my medical equipment some of i had to get rid off bcuz of space…"

      j.  "I pay rent here as well and I medical needed that space for medical reasons which i have you when i ask."

      k.  "Also did you get the documentation on my emotional support dog form my doctor office?"

l.   "Wondering why they take the motor off of my door and left my door like that and slap shut now bcuz how it off the hinges."

**Exhibit C**

48. Plaintiff's requests are related to his disability because he is not able to complete these basic tasks due to his disability, and without assistance from maintenance or home health aides.

49. Plaintiff is not able to access his cabinetry or kitchen utilities in their disrepair and at their current location because of his disability.

50. Plaintiff's carpeting requires maintenance and repair because of his power wheelchair.

51. Plaintiff's bathroom is not equipped properly for his disability and requires a modified sink, toilet, and bathtub, handlebars, and routine attention from maintenance

52. Upon information and belief, CRM Defendants are ignoring Plaintiff's basic maintenance requests as a form of retaliation, intimidation, coercion, and harassment, in response for Plaintiff bringing this lawsuit and making complaints, and no other valid or reasonable basis can be shown by CRM Defendants for ignoring Plaintiff's requests, violating FHA Section 3617.  Revock v. Cowpet Bay W. Condo. Ass'n, 853 F.3d 96 (3rd Cir. 2017)

53. As of the date of filing this Complaint on January 14, 2024, CRM Defendants have not made adequate effort to conduct necessary maintenance work or modifications in response to Plaintiff's verbal requests and email requests beginning in November, 2022.

**Exhibit A - K**

54. On July 23, 2023, Plaintiff sent an email to Defendant Erica JOHNSON, ejohnson@crmresidential.com discussing problems with lack of access to hot water and mishandling of the issue by on-site maintenance staff.

**Exhibit D,** Email to CRM Defendants, *dated 07/23/2023*

55. Plaintiff complained of lack of hot water and inadequate access to his mailbox and references his complaints to have his apartment wheelchair accessible.

56. On September 7, 2023, Plaintiff sent an email to Defendant Erica JOHNSON, ejohnson@crmresidential.com discussing problems with lack of adequate access to common areas in the building such as the balcony.

**Exhibit E,** Email to CRM Defendants, *dated 09/07/2023*

57. Plaintiff states the following in his email: "I was leaving the balcony the door is really hard to open to start, but I was exiting as soon i try to leave its a bump on the way out all I did was make a turn and I broke my phone which i need for my doctor and nurse aid and to just to have to let people in thru the front door. What am getting at is if you can just have a push button so the door can open on its own then ill be able to hold my things better when i come across that bump when i exit. Please try to make things a little easier for me to live here as well bcuz the phone cost 600 to replace and i was wondering if you can reimburse me but if not please try to fix these door that is difficult to open please and thank you…"

**Exhibit E**

58. On September 13, 2023, Plaintiff sent an email to Defendant Erica JOHNSON, ejohnson@crmresidential.com discussing problems with unprofessional mistreatment by staff and being disrespected, and directed at Plaintiff, and indirectly at Plaintiff through his mother and home health nurses aides and professional staff.

**Exhibit F,** Email to CRM Defendants, *dated 09/13/2023*

59. Plaintiff's written complaint states the following: "Ok this has been going on for awhile and I sincerely don't appreciate it.. The security guard has been telling my nurses and aide negative remarks about me and I really don't appreciate it bcuz my aide will quite or start haing bad

energy towards me and I am trying to figure out why and this been going on for a long time and now am sick of it bcuz I really need the help and I don't need my worker quitting on my bcuz of false accusations… I been here for years and I never once disrespected no one and this beyond disrespectful this is starting a lot of problems telling my workers anything about me or anything else about my past helpers or anything or making up false accusations about me. He's here to do a job and not be working about me please and thank you…"

**Exhibit F**

60. On September 18, 2023, Plaintiff sent an email to Defendant Erica JOHNSON,
ejohnson@crmresidential.com discussing more problems with unprofessional mistreatment by staff and being disrespected, especially security staff.

**Exhibit G,** Email to CRM Defendants, *dated 09/18/2023*

61. Plaintiff's specific complaint is languaged as: "I have spoken to the property manager last week about the security speaking bad about me and now am haering they are speaking bad about my mother and understand she's going thru what she's going thru but your staff is antagonizing her and me and my aides and it's not professional nor talking about our issues that's called defamation of our character and it's violating our HIPPA law…. Its not cool for staff to make inside joke and antagonize me or my mother and i have witnesses. now since nobody isn't doing nothing in the management department may i please speak with the security guard superior bcuz one thing for sure this really inappropriate and i had lost some of my worker bcuz of this behavior and my worker that work now feel some type of way."

62. CRM Defendants mistreatment of Plaintiff, his mother, and his health aides and guests as described in his email constitutes intimidation, coercion, and harassment, for purposes of FHA Section 3617. Revock v. Cowpet Bay W. Condo. Ass'n, 853 F.3d 96 (3rd Cir. 2017)

63. On November 21, 2023, Plaintiff sent an email to Defendant Erica JOHNSON,

    ejohnson@crmresidential.com discussing a request for a 2-bedroom unit, e.g. a larger unit

    more suited to accommodate Plaintiff's disability and 24/7 use of a power wheelchair.

    **Exhibit H,** Email to CRM Defendants, *dated 11/21/2023*

64. CRM Defendants email response was specifically that the 2-bedroom unit is allotted only for

    a staff member, i.e. the superintendent, and not available for any tenants of 801 Locust Street.

65. CRM Defendants actions of depriving Plaintiff of adequate access to 2-bedroom constitutes

    disability discrimination and disparate treatment.

66. CRM Defendants advertising 2-bedroom units to the public and through HUD and through

    federal websites constitutes fraud and material misrepresentation.

67. On January 9, 2024, Plaintiff sent an email to Defendant Erica JOHNSON,

    ejohnson@crmresidential.com discussing a specific request pertaining to his power

    wheelchair access, and inadequate carpeting causing injury when he occasionally falls.

    **Exhibit I,** Email to CRM Defendants, *dated 01/09/2024 & 1/13/2024*

68. Plaintiff's request states specifically:

    a. 1. "May I please have my cabin back up where they use to be bcuz my appliance

       don't fit where they use to be and have no room in kitchen."

    b. "one last thing this rug got to go its to hard for one I am hurting myself when i fall

       wanted to know if i can get my own rug that can be softer when i fall bcuz its

       concrete under these rug and cold when you on the floor and all bcuz i have visit

       it a lot lately."

    c.  "please help me help my self and also putting grab bar around the wall as well bcuz that would help thanks if not i can get some help thru the state can i just get the ok please. thank you for reading me out."

    **Exhibit I**

69. On January 13, 2024, Plaintiff made written requests regarding his need for a new rug and cabinets as pertains to his disability, stating:

    a.  "Im going to get my rug and cabinets done myself. i need space i can't do nothing on my counter I didn't think that thru the first time, plus i still can't get to my things at all ill send video if needed."

    b.  "i broke my ribs and tail bone on this concrete floor am going to get better rug and I been here for 10 years in a chair tracking all type of stuff i have a dog who sometime don't make it out. the rule say after 8 years we are able to get new rug so am not asking for special favors am aking for things i suppose to get and to better me after my injury and bad surgeries."

    **Exhibit I**

70. Plaintiff's carpet has not been changed or modified since the inception of his tenancy.

71. On January 10, 2024, Plaintiff sent an email to Defendant Erica JOHNSON, ejohnson@crmresidential.com discussing his wheelchair, requesting better access to cabinets and closets, and specific maintenance requests which were ignored by CRM Defendants.

**Exhibit J,** Email to CRM Defendants, *dated 01/10/2024*

72. Plaintiff's service requests specifically state: "first it's not getting nowhere i don't get an response and i think its not fair how i am being treated am done with this way of things am coming to the office respectfully and i'm going to go ask can i get an written letter letting me

know when am getting my things fix in my apartment bcuz them door is a big factor. they just fall off the hinges but its other things i need and that carpets bad. i can get notes to fill out paperwork but not none for my question that am asking this becoming an annoying and its making my mental status worse i sincerely respect everybody may i have the same treatment when it comes down to communication."

**Exhibit J**

73. On December 18, 2023, Plaintiff received an email to Defendant Erica JOHNSON, [ejohnson@crmresidential.com](mailto:ejohnson@crmresidential.com) falsely accusing Plaintiff of attempting to breed his emotional support animals JR and Queenie, being a male and a female English bulldog.

**Exhibit K,** Email from CRM Defendants, *dated 12/18/2023*

74. CRM Defendants made false statements that amount to intimidation, coercion, and harassment, threatening Plaintiff's housing, in retaliation for Plaintiff's reasonable requests for an emotional support animal, making a false and baseless accusation in an attempt to deny Plaintiff his rights according to his disability.

A. *Kitchen ease of access*

75. Plaintiff lacks quiet use and enjoyment of his residential unit, due to lack of adequate access to his kitchen facilities, including cabinetry, refrigerator, stove units, microwave, and other kitchen appliances.

a. *Verbal Complaints to Berger Defendants*

76. Plaintiff requested modifications of the kitchen utilities, verbally, on the dates indicated above at Paragraph 30.

77. Since January 1, 2021 to the present, Plaintiff lacks adequate access to the refrigerator and electric stove-top, microwave, and oven, which are not readily accessible to him from his motorized wheelchair due to disability.

78. On dates indicated at Paragraph 30. above, Plaintiff made verbal requests for modifications of the kitchen cabinetry and appliances, including the lower and upper cabinets, which are not accessible to him due to his disability.

79. From January 1, 2021 to December 31, 2021 Plaintiff made these verbal requests with Berger Defendants, directly to Defendants Joseph BERGER and Defendant SIMMONS.

80. On the dates indicated at Paragraph 30. above, Plaintiff requested verbally a modification of the kitchen sink, to have better access to running water, which is not properly adjusted for height and therefore inaccessible to him from his power wheelchair.

81. On the dates indicated at Paragraph 30. above, Plaintiff requested verbally and in writing, better access to cabinets, pantry, and storage for his kitchen supplies, which are not accessible to him because of his disability which confines him to a power wheelchair.

82. On the dates indicated at Paragraph 30. above, Plaintiff complained verbally how lack of access to basic kitchen functions and utilities such as cabinetry, appliances, running hot and cold water, oven, refrigerator, microwave, was unfair and caused him pain, suffering, frustration, humiliation, and grief.

*b.  Verbal Complaints to CRM Defendants*

83. On dates indicated at Paragraph 36. above, Plaintiff made verbal requests for modifications of the kitchen cabinetry and appliances, including the lower and upper cabinets, which are not accessible to him due to his disability.

84. From January 1, 2022 to the present Plaintiff made these verbal requests with CRM Defendants, made directly to Erica JOHNSONS Defendant SIMMONS.

85. On the dates indicated at Paragraph 36. above, Plaintiff requested verbally a modification of the kitchen sink, to have better access to running water, which is not properly adjusted for height and therefore inaccessible to him from his power wheelchair.

86. On the dates indicated at Paragraph 36. above, Plaintiff requested verbally and in writing, better access to cabinets, pantry, and storage for his kitchen supplies, which are not accessible to him because of his disability which restricts him to a power wheelchair.

87. On the dates indicated at Paragraph 36. above, Plaintiff complained verbally how lack of access to basic kitchen functions and utilities such as cabinetry, appliances, running hot and cold water, oven, refrigerator, microwave, was unfair and caused him pain, suffering, frustration, humiliation, and grief.

B. _Bathroom ease of access_

a. _Complaints to Berger Defendants_

88. On the dates indicated at Paragraph 30. above, Plaintiff complained to Berger Defendants verbally of the extremely difficult and obstructive situation regarding access to basic bathroom utilities, specifically the bathroom tub, sink, and toilet.

89. On the dates indicated at Paragraph 30. above, Plaintiff complained verbally to Berger Defendants directly to Defendant Joseph BERGER and Defendant Nakeisha SIMMONS.

90. On the dates indicated at Paragraph 30. above, Plaintiff complained verbally that he could not access the bathroom tub easily from his motorized wheelchair, without causing himself serious risk of injury, reporting verbally and in writing that accessing the bathroom tub has

caused him to slip and fall, discomfort, frustration, grief, and other risks to bodily safety and actual injury.

91. Plaintiff suffered injuries, such as slip and fall, causing his body to fall and impact directly with the tub as a result of lack of adequate bathtub facilities, appliances and adjustments needed to accommodate his disability, causing discomfort, pain and suffering.

92. On the dates indicated at Paragraph 30. above, Plaintiff complained verbally to Berger Defendants specifically that he could not access the bathtub, bathroom sink, and toilet easily from his wheelchair, causing him lack of adequate access to these basic utilities and services.

93. On the dates indicated at Paragraph 30. above, Plaintiff complained verbally to Berger Defendants that he could not access the bathtub, bathroom sink, and toilet, without discomfort and enormous difficulty, and he was injured as a result, suffering slip and fall.

94. Berger Defendants had a duty of care as Landlord to Plaintiff who is disabled.

95. Berger Defendants were on notice of the dangerous condition in Plaintiff's residential unit with regards to his disability.

96. Berger Defendants were negligent and/or grossly negligent in this disregard and failure to modify or correct the dangerous condition in Plaintiff's residential unit, causing him to suffer injury and harm.

97. Berger Defendants' negligence is the direct and proximate cause of injuries and harm suffered by Plaintiff.

*b.   Complaints to CRM Defendants*

98. On dates indicated at Paragraph 36. above, Plaintiff complained to CRM Defendants verbally of the extremely difficult and obstructive situation regarding access to basic bathroom utilities, specifically the bathroom tub, sink, and toilet.

99. On dates indicated at Paragraph 36. above, Plaintiff complained to CRM Defendants directly to Defendant Nakeisha SIMMONS and Defendant Erica JOHNSON.

100. On dates indicated at Paragraph 36. above,, Paragraph complained verbally that he could not access the bathroom tub easily from his motorized wheelchair, without causing himself serious risk of injury, reporting verbally and in writing that accessing the bathroom tub has caused him to slip and fall, discomfort, frustration, grief, and other risks to bodily safety and actual injury.

101. Plaintiff suffered injuries, such as slip and fall, causing his body to fall and impact directly with the tub as a result of lack of adequate bathtub facilities, appliances and adjustments needed to accommodate his disability, causing discomfort, pain and suffering.

102. On dates indicated at Paragraph 36. above,, Plaintiff complained verbally to CRM Defendants specifically that he could not access the bathtub, bathroom sink, and toilet easily from his motorized wheelchair, causing him lack of adequate access to these utilities and services.

103. On dates indicated at Paragraph 36. Above, Plaintiff complained verbally to CRM Defendants that he could not access the bathtub, bathroom sink, and toilet, without discomfort and enormous difficulty, and he was injured as a result, suffering slip and fall.

104. CRM Defendants have a continuous and ongoing duty of care as Landlord to Plaintiff who is a disabled tenant of 801 Locust Street, Philadelphia, PA.

105. CRM Defendants are on notice of the dangerous condition in Plaintiff's residential unit with regards to his disability.

106.    CRM Defendants are negligent and/or grossly negligent in this disregard and failure to modify or correct the dangerous condition in Plaintiff's residential unit, causing him to suffer injury and harm.

107.    CRM Defendants' negligence is the direct and proximate cause of injuries and harm suffered by Plaintiff.

### C. *Bedroom ease of access*

#### a. *Complaints to Berger Defendants*

108.    On the dates indicated at Paragraph 30. above, Plaintiff complained to Berger Defendants of lack of adequate access to his bedroom storage and closets for clothes and personal items.

109.    Plaintiff is unable to reach these personal items due to lack of adequate storage space for his personal items, including closet space and armoire.

110.    Plaintiff was permitted by Berger Defendants a special adaptable and temporary bed which was allotted for his medical treatment and personal use, which he kept stored for use in his living room, and adjacent to a living room window, and near a non-working heater and cooling unit.

111.    On the dates indicated at Paragraph 30. above Plaintiff complained to Berger Defendants that the heater and cooling unit was not working properly, and neither was the air conditioning in the room.

#### b. *Complaints to CRM Defendants*

112.    On the dates indicated at Paragraph 36. above, Plaintiff complained to CRM Defendants that the heater and cooling unit was not working properly, and neither was the air conditioning in the room.

113.    Berger Defendants and CRM Defendants intentionally interfered with Plaintiff's right to quiet use and enjoyment of the premises, violating his landlord-tenant contract, by failing to provide adequate maintenance of basic services of adequate heating and air cooling.

### D. *Parking spot ease of access*

114.    On the dates indicated at Paragraph 30. above, Plaintiff complained to Berger Defendants verbally regarding lack of adequate access to a handicapped accessible parking spot.

115.    On the dates indicated at Paragraph 30. above, Plaintiff complained to Berger Defendants that the parking spot allotted to him is not wheelchair accessible, for all practical purposes, despite its designation as a handicapped parking spot.

116.    Defendant Joseph BERGER specifically refused Plaintiff access to his handicapped parking spot.

117.    On the dates indicated at Paragraph 30. Above, Plaintiff complained to Berger Defendants that another car was using his parking spot without his permission.

118.    Plaintiff's former designated parking spot was neither handicapped nor wheelchair accessible, causing Plaintiff discomfort and frustration, mainly because of concrete pillars immediately adjacent to the parking spot leaving only a few inches space and rendering the doors unopenable and inaccessible to Plaintiff from his power wheelchair.

119.    Defendant Joseph BERGER deprived Plaintiff of a handicapped designated parking spot and instead used it for himself, and/or permitted it to be used by an unknown third-party individual.

120.    Berger Defendants, through acts and omissions of Defendant Joseph BERGER, did use coercive, intimidating, and harassing tactics, causing Plaintiff to be bullied and threatened,

and physically assaulted by a third-party individual who was not a resident of the property, but, upon and information and belief, who works at a medical marijuana distributor nearby.

### E.  *Guest visiting ease of access and security issues*

121.    Plaintiff requires various guests to attend to his special needs, medical treatment, and care, specifically home health aides which visit him on a daily basis, due to his disability.

122.    CRM Defendants do not utilize proper paging technology or other auxiliary aids, or other type of service, to announce Plaintiff's guests, interfering with his ability to receive proper and timely assistance from his guests and home health aides.

123.    On the dates indicated at Paragraph 36. above, Plaintiff complained to CRM Defendants regarding lack of adequate technology, or an auxiliary service which would provide Plaintiff with advance notice, either from the security guards or the guests themselves, about their arrival and coming onto the premises.

124.    Plaintiff does not have the ability to have guests announce their presence using a security guard, pager or other device, does not have adequate time for preparation to verify identities and receive guests correctly, and cannot therefore maintain proper personal security measures and predetermine the identity of the guest.

### F.  *Balcony Ease of Access and Laundry Rooms*

125.    On the dates indicated at Paragraph 36. above, Plaintiff complained to CRM Defendants regarding lack of ease of access to a balcony and common area located on the 2nd floor.

126.    Plaintiff cannot access the 2nd floor balcony without great strain, effort, and frustration and is deterred from using the common area because of its inadequate handicapped access and lack of wheelchair accessibility.

127.    Plaintiff also cannot easily access the laundry room, primarily during raining days, due to

a large puddle of water that accumulates in the center of the laundry room whenever it rains.

### *Photographic Evidence*

128.    Plaintiff offers the following photographic evidence which demonstrates the difficulty of

ease of access to various services from his motorized wheelchair inside his residential unit.

129.    On or around December 1, 2022, Plaintiff accessed his kitchen in his wheelchair.



130.    On or around December 1, 2022, Plaintiff cannot access items in his open refrigerator.



131.    As of December 1, 2022, Plaintiff cannot access the kitchen sink because of its height.



132.    On or around December 1, 2022, Plaintiff cannot access the cabinets and pantry items.



133.    On or around December 1, 2022, Plaintiff cannot access stored items in the cabinets.



134.    On or around December 1, 2022, Plaintiff cannot access the sink, toilet and bathroom tub.



135.    On or around December 1, 2022, Plaintiff has limited handrails in his bathroom.



136.    On or around December 1, 2022, Plaintiff cannot access his closet storage space.









137.    On or around December 1, 2022, Plaintiff cannot easily access the balcony space.




138.    On or around December 1, 2022, Plaintiff cannot easily access the laundry machines.




### COUNT I, VIOLATIONS OF THE FAIR HOUSING ACT (FHA)

139.    Plaintiff hereby incorporates paragraphs ¶¶ 1 - 138 including any and all pertinent factual

pleadings contained, therein for purposes of <u>Count I</u>.

140.    CRM Defendants are in direct violation of the clear mandates of the FHA in their

persistent, continuing, continuous and ongoing misconduct and violations of federal and state

anti-discrimination laws, committing multiple violations which amount to a pattern of

malicious intimidation, coercion, and harassment, and further their actions and omissions,

being intentional, reckless, grossly negligent, and/or negligent, and by acting in blatant and

wanton disregard of Plaintiff's rights as a disabled and handicapped person, and in retaliation

against Plaintiff for availing himself of his rights, privileges and immunities under federal

and state law.

141.    Berger Defendants and CRM Defendants engaged in unlawful discrimination on the basis

of Plaintiff's disability when he was repeatedly and continuously deprived of reasonable

accommodations, expressly and unequivocally requested, both verbally and in writing.

142.    Berger Defendants and CRM Defendants engaged in unlawful discrimination on the basis

of Plaintiff's disability when absolutely no consideration was given to his reasonable requests

for a larger residential unit to accommodate his motorized scooter and disability.

143.    Berger Defendants acting through their employees and agents Defendants, Robert

BERGER and Defendant Joseph BERGER and Defendant Nakeisha SIMMONS,  from

January 1, 2021 to December 31, 2021, acted with blatant and callous disregard to Plaintiff's

requests and protected rights under federal law, knowingly, willfully, and conspiring and

acting intentionally to violate those protected rights.

144.    Berger Defendants' and CRM Defendants' actions constitute intentional violations and wanton disregard of Plaintiff's known rights and a flagrant misuse and abuse of a federally funded programs, grants, and appropriations, i.e. unlawful taking and use of federal funds, by failing to provide the non-exhaustive list of the following: additional grab bars, a bathroom with accessible facilities for a person with Plaintiff's disability, easier access to common areas, easier doors to open/close, lowered or height adjusted kitchen counters and appliances, a shower unit that is easily accessible from a motorized wheelchair, handicapped accessible bathtub, effective air-conditioning and heating units, and a larger residential unit.

**COUNT II, AMERICANS WITH DISABILITIES ACT (ADA)**

145.    Plaintiff hereby incorporates paragraphs ¶¶ 1 - 144, including any and all pertinent factual pleadings contained therein, for purposes of <u>Count II</u>.

146.    CRM Defendants are subject to the requirements of Title III of the ADA and the federal law prohibitions against disability discrimination and requirements of reasonable accommodations and modifications.

147.    CRM Defendants receive federally subsidized rent from disabled residents, including Plaintiff, and did commit egregious violations of the ADA, in blatant and wanton disregard of Plaintiff's protected rights, causing him injury.

148.    Plaintiff is entitled to injunctive relief for violations of Title III of the ADA which is made available in this private suit pursuant to 28 C.F.R. § 36.501.

149.    Plaintiff is entitled to attorney's fees for attorney's fees, litigation costs and expenses pursuant to 28 C.F.R. § 36.505 for violations of Title III of the ADA.

## COUNT III, SECTION 504, REHABILITATION ACT OF 1973

150.    Plaintiff hereby incorporates paragraphs ¶¶ 1 - 149, including any and all pertinent factual

pleadings contained, therein for purposes of <u>Count III</u>.

151.    CRM Defendants are subject to the requirements of Section 504 of the Rehabilitation Act

of 1973, and its prohibitions against disability discrimination and requirements of reasonable

modifications, as a private organization, principally engaged in the business of housing, and

conducting a program or activity that receives federal financial assistance or funding.  29

U.S.C. § 794; 42 U.S.C. §§  3535(d), and 5309

152.    CRM Defendants acting through its employees and agents Defendant Nakeisha

SIMMONS and Defendant Erica JOHNSON, from January 1, 2022 to the present, acted with

blatant, wanton, and callous disregard to Plaintiff's requests and protected rights under

federal law causing injury to Plaintiff.

153.    CRM Defendants acts and omissions constituted a pattern of knowingly, willfully, and

intentionally conspired and intended to violate Plaintiff's rights constituting a flagrant misuse

and abuse of federally funded programs, grants, and appropriations, causing injury to

Plaintiff.

## COUNT IV, FHA Section 3617 Intimidation Coercion and Harassment

154.    Plaintiff hereby incorporates paragraphs ¶¶ 1 - 153, including any and all pertinent factual

pleadings contained therein for purposes of <u>Count IV</u>.

155.    Berger Defendants acting through its employees and agents Defendants Robert BERGER

and Defendant Joseph BERGER, from January 1, 2021 to December 31, 2021, did cause

intimidation, coercion, and harassment, causing him personal security issues, and did use

verbal threats of eviction and towing his vehicle, deterring Plaintiff from making further complaints and grievances regarding his reasonable accommodation requests.

156.    CRM Defendants acting through its employees and agents Defendants Nakeisha SIMMONS and Defendant Erica JOHNSON, from January 1, 2022 to the present, did cause Plaintiff to suffer intimidation, coercion, and harassment, deterring him from making further complaints and grievances regarding his reasonable accommodations.

### COUNT V, Negligence

157.    Plaintiff hereby incorporates paragraphs ¶¶ 1 - 156, including any and all pertinent factual pleadings contained, therein for purposes of Count V.

158.    Berger Defendants are liable to Plaintiff under a state-based theory of negligence where a duty of care to provide housing goods and services exists between landlord and tenant, from January 1, 2021 to December 31, 2021.

159.    Berger Defendants became aware of a dangerous condition on the premises regarding Plaintiff's access to his bathroom facilities, and ignored that condition and failed to make necessary repairs and/or modifications.

160.    CRM Defendants are liable to Plaintiff under a state-based theory of negligence where a duty of care to provide housing goods and services existed between landlord and tenant, from January 1, 2022 to the present.

161.    CRM Defendants became aware of a dangerous condition on the premises regarding Plaintiff's access to his bathroom facilities, and ignored that condition and failed to make necessary repairs and/or modifications.

162.    Berger Defendants and CRM Defendants breached that duty of care and are jointly and severally liable to Plaintiff for injuries he suffered as a result.

163.    Acts and omissions of Berger Defendants and CRM Defendants with respect to failure to make necessary repairs and accommodations to his residential premises are the direct and proximate result of Plaintiff's injuries.

164.    Plaintiff has sustained various injuries such as slip-and-fall in his bathroom and bathtub, pain and suffering, related to difficulty of ease of access onto common areas of the premises, loss of personal security and safety as a result of lapses in security measures, discomfort, frustration and pain due to lack of adequate access to kitchen utilities, and other interferences with quiet use and enjoyment of the premises, as a direct result and cause of the negligence of Berger Defendants and CRM Defendants.

165.    Berger Defendants and CRM Defendants owed a special duty of care to Plaintiff, based on actual notice of Plaintiff's disability, taking some steps towards acknowledging Plaintiff's requests for reasonable accommodations and modifications, thereby causing Plaintiff to reasonably rely on those assurances, and then blatantly disregarding and ignoring Plaintiff's complaints and grievances, and failing to take appropriate remedial measures.

166.    Berger Defendants and CRM Defendants are liable to Plaintiff for punitive damages under an assumption of duty of care based on knowledge and awareness of Plaintiff's protected rights under a federal law, and a heightened duty of care owed to tenants by a landlord who receives federal funds and holds themselves out as compliant with HUD, ADA, FHA, and Section 504, and federal regulations designed to prevent disability discrimination.

167.    Berger Defendants and CRM Defendants acted intentionally, wantonly and recklessly in known disregard of the risks to Plaintiff's medical condition, disability and special needs, given their requirement to comply with federal law under the federal regulations promulgated by U.S. Department of Housing and Urban Development (HUD),

### COUNT VI, Negligence Per Se

168.    Plaintiff hereby incorporates paragraphs ¶¶ 1 - 167, including any and all pertinent factual
pleadings contained, therein for purposes of Count VI.

169.    Berger Defendants and CRM Defendants are liable to Plaintiff under a theory of
negligence *per se,* because the FHA, ADA, and Section 504 embody statutes and regulations,
which the landlord must follow, being promulgated by the federal government and HUD,
which outline a scope of obligations, promises, and a duty of care required for landlords
managing a residential premises and owed to tenants who have special needs and disabilities.

170.    Berger Defendants and CRM Defendants violated those federal regulations of whom
Plaintiff is a protected class.

171.    Plaintiff is a disabled resident of a federally funded activity or program to provide
housing and falls under an intended class of persons that FHA, ADA, and Section 504 are
designed to protect. Feleccia v. Lackawanna Coll., 215 A.3d 3 (Pa. 2019); Feld v. Merriam,
485 A.2d 742 (Pa. 1984)

172.    Berger Defendants and CRM Defendants acted with intentional, gross, reckless, and
wanton disregard for the federal rules and regulations outlined by FHA, ADA, and Section
504 and grossly negligence and reckless disregard of Plaintiff's rights, safety, well-being and
right to be free from disability discrimination under these anti-discrimination laws, thus
violating a presumed duty of care owed to its tenant with special needs and disabilities.

173.    Berger Defendants' and CRM Defendants' violation of FHA, ADA, and Section 504 are
the direct cause of Plaintiff's injuries, impaired quiet use and enjoyment of his residential
unit, deprivation of rights under the Landlord Tenant Act of 1951 and Philadelphia Code.

## COUNT VIII, Fraud

174.    Plaintiff hereby incorporates paragraphs ¶¶ 1 - 173, including any and all pertinent factual

pleadings contained, therein for purposes of <u>Count VIII</u>.

175.    Berger Defendants and CRM Defendants are liable to Plaintiff under a theory of fraud,

having represented to Plaintiff, various third-parties, and to other residential tenants that they

are fully equipped and compliant with federal statutes, and their disability anti-discrimination

laws and mandates, such as the FHA, ADA, and Section 504.

176.    Berger Defendants and CRM Defendants use false information, false advertising and due

use false pretenses to induce residential tenants with special needs to apply for housing,

knowing that they are not in compliance, as advertised on <u>www.hud.org</u> and other platforms,

and for advertising 2-bedroom units which are not offered to tenants or disabled tenants.

177.    Berger Defendants and CRM Defendants use false information, false advertising, make

false reports, and use false pretenses to induce federal agencies and obtain funding and

federal assistance, administered through federal and state agencies, such as HUD.

## COUNT IX, Damages

178.    Plaintiff has suffered serious bodily injuries, hospitalizations, such as pressure sores,

serious burns, head trauma, bodily injuries, hospitalizations, falls, and financial loss caused

by purchase of wheelchair, loss of wages, purchase of heating and cooling systems, payment

for home-health aides to assist with daily chores, transportation fees to accommodate the lack

of a parking spot, insect and rodent extermination services, new furniture due to the

infestation of cockroaches, mice, and bedbugs, interference with quiet use and enjoyment of

the premises, and inability to fully enjoy the property the same as other tenants solely due to

his disability.

WHEREFORE, Plaintiff avers that Berger Defendants and CRM Defendants are liable to him and respectfully requests an award of damages in excess of $150,000, injunctive relief, and any other form or relief this Honorable Court deems just and proper.


Date:  *January 14, 2024*                              Respectfully submitted,

                                                       /s/  *Lucas T. Nascimento, Esq.*
                                                       Lucas T. Nascimento, Attorney at Law
                                                       Land Title Building
                                                       100 S. Broad St., Ste. 1830
                                                       Philadelphia, PA 19110
                                                       P: 215-944-4428
                                                       C: 609-703-3441
                                                       Nascimentolaw@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| | ) | |
| **JIHAAD R. LASSITER** | ) | |
| | ) | **CIVIL ACTION** |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **No. 2:22-cv-05224** |
| | ) | |
| **AMERICAN POSTAL WORKERS** | ) | |
| **HOUSE,et. Al.,** | ) | |
| | ) | |
| *Defendants.* | ) | |

_____)

### VERIFICATION

Pursuant to Fed.R.Civ.P. Rule 11, the undersigned counsel avers, under penalty of perjury, that the facts and averment contained in the foregoing Amended Complaint  are true and correct to the best of his knowledge, understanding and belief.

                                        */s/ Lucas T. Nascimento, Esq.*
                              _____

Date:    *January 14, 2024*              Lucas T. Nascimento, Attorney at Law
                                         100 S. Broad St., Ste. 1830
                                         Philadelphia, PA 19110
                                         P: 215-944-4428
                                         C: 609-703-3441
                                         Nascimentolaw@gmail.com